UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN BLUDWORTH
SHIPYARD, INC. ET AL.                              CIVIL ACTION

VERSUS                                             NO: 17-3459

CAPITAL CONSULTANTS, INC.
OF LOUISIANA ET AL.                                SECTION: "H"(1)

## ORDER AND REASONS

Before the Court are Cross Motions for Summary Judgment (Docs. 21 and 25) and Defendants' additional Motion for Summary Judgment (Doc. 24) For the following reasons, the Motions are DENIED.

## BACKGROUND

Defendant Capital Consultants, Inc. of Louisiana ("Capital") and Plaintiff Wire Industrial, Inc. ("Wire") are engaged in the business of leasing laborers to other businesses. In December of 2013, Capital and Wire entered

into a teaming agreement in which Wire agreed to handle the hiring and leasing out of laborers to customers while Capital handled certain financial and administrative matters (the "Teaming Agreement"). The parties agreed to share profits on a 50/50 basis. As part of the agreement, Capital agreed to provide liability insurance.

Thereafter, Wire leased two workers, Gilberto Flores and Santos Beltran Silva, to Plaintiff John Bludworth Shipyard Inc. ("JBS") pursuant to a subcontractor agreement between Wire and JBS that predated the Teaming Agreement (the "Subcontractor Agreement"). While working for JBS, Flores and Silva were injured and subsequently filed suit in a federal district court in Texas against JBS for its negligence in causing their injuries. Pursuant to indemnity and insurance coverage clauses in the Subcontractor Agreement, Wire's insurer First Mercury provided JBS with defense, indemnity, and insurance coverage for Flores's and Silva's claims against JBS. First Mercury settled the claims brought by Flores and Silva for a confidential amount and then instituted this action. In this matter, First Mercury, JBS, and Wire seek indemnity, defense, and insurance coverage from Capital and its insurer Liberty Mutual Insurance Company ("Liberty"). Plaintiffs allege that Capital owes them indemnity and defense under the terms of the Teaming Agreement.

Plaintiffs and Defendants now bring Cross Motions for Summary Judgment. Defendants argue that the terms of the Teaming and Subcontractor Agreements do not entitle Plaintiffs to the relief they seek herein, while Plaintiffs seek judgment requiring Defendants to provide them with insurance coverage for the amount of the settlement. Defendants have also filed an additional Motion for Summary Judgment arguing that Plaintiffs cannot

succeed on their claims because (1) the Longshore and Harbor Worker's Compensation Act (LHWCA) was Flores's and Silva's exclusive remedy, and (2) the Subcontractor Agreement was not in place at the time of the accident. This Court will consider each argument in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## **LAW AND ANALYSIS**

In their first motion, Defendants argue that they cannot be liable to Plaintiffs because Capital was not a party to the Subcontractor Agreement and the Teaming Agreement does not provide that Capital must procure insurance to cover Wire's contractual liability to third parties. In Plaintiffs' motion, they argue that the Teaming Agreement clearly requires Capital to provide liability insurance to Wire for its obligations under the Subcontractor Agreement and that Capital effectively became a party to this preexisting agreement between Wire and JBS through the Teaming Agreement.

The parties agree that Louisiana law applies to the interpretation of the Teaming Agreement. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[9] "The

---

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] LA. CIV. CODE art. 2046.

determination of whether a contract is clear or ambiguous is a question of law."[10] The Teaming Agreement is brief and conclusory in its summary of the relationship formed between Wire and Capital. Indeed, the agreement is styled as a proposal. The relevant portions of the document state merely that Capital "will supply all back office support including coverage of Workers Compensations, Liabilities, and taxes for payrolled employees." It later states that Capital "will provide Liability Insurance." These terms are ambiguous at best. This Court cannot determine from the terms of the Teaming Agreement what sort of liability insurance the parties contemplated Capital would procure or whether that insurance would cover contractual liabilities incurred by Wire.

"[W]hen the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties."[11] Unfortunately, however, the parties have provided scant evidence as to the parties' intent. Even so, summary judgment "is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith."[12] Summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact is not appropriate.[13] Accordingly, both parties' requests for summary judgment are denied.

---

[10] Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 579 (La. 2003).
[11] Dixie Campers, Inc. v. Vesely Co., 398 So. 2d 1087, 1089 (La. 1981).
[12] LFI Fort Pierce, Inc. v. Acme Steel Bldgs, Inc., 200 So. 3d 939, 946 (La. App. 3 Cir. 2016).
[13] *Id.*

Defendants' second motion sets forth two additional, but equally unsuccessful, arguments. First, they argue that the underlying settlement was unreasonable because JBS was immune from tort liability under the LHWCA as the borrowed employer of Flores and Silva. Plaintiffs point out that this argument was made to and rejected by the Texas district court on summary judgment. Second, Defendants argue that the Subcontractor Agreement was not in effect when Flores and Silva were injured. In making this argument, Defendants point to testimony from a representative of Wire in which he states that he believed that the Subcontractor Agreement had been modified prior to the accident.[14]

Each of these arguments present defenses to the underlying claim by Flores and Silva against JBS and therefore seek to attack the propriety of the settlement. Under Louisiana law,

> [a] settlement agreement entered into by a policy holder or insured may be enforced against the liability insurer which did not consent to the settlement if the insured shows that the settlement is made in good faith, on a reasonable basis, in a reasonable amount and, in the event of a coverage denial, coverage is found to exist.[15]

Accordingly, assuming the settlement of Flores's and Silva's claims was reasonable and made in good faith, Defendants have waived their right to contest it or assert defenses to the underlying claim.

---

[14] A modified contract has not been produced.
[15] Arceneaux v. Amstar Corp., 969 So. 2d 755, 771 (La. App. 4 Cir. 2007).

Defendants argue that this rule of law does not apply where the insurer, not the insured, seeks to invoke it.[16] The cases cited by Defendants to support this position, however, are inapplicable here. Defendants cite to cases discussing the waiver of coverage defenses between insurers.[17] For instance, *Chubb Custom Insurance Co. v. Burnett & Co.* stands merely for the proposition that an insurer cannot argue that another insurer has waived its coverage defenses because it failed to reserve its right to those defenses against the insured.[18]

Here, Defendants are not seeking to assert a coverage defense. Rather, they seek to call into question the propriety of the settlement for which Plaintiffs allege they owe. Defendants have cited no law which would allow them to pick apart the defense and settlement of litigation of which they had notice and refused to participate. Accordingly, Defendants may only succeed in their argument to the extent that the settlement was unreasonable or made in bad faith.

Defendants argue that the settlement was unreasonable because there was "no potential for a reasonable jury" to find that Flores and Silva were not

---

[16] The Court notes a considerable lack of clarity in the briefs and pleadings of both Plaintiffs and Defendants regarding which arguments and claims are being asserted by and against which parties.

[17] *See* St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202, 208 (5th Cir. 1996) ("[W]e reject the argument that St. Paul and Centennial waived the right to rely on their 'other insurance' clauses by failing to reserve the right to avoid coverage on the basis of those clauses."); Chubb Custom Ins. Co. v. Burnett & Co., No. 04-0950, 2006 WL 1663820, at *5 (E.D. La. June 15, 2006) ("Certain Underwriters is not estopped from asserting a coverage defense against Chubb and did not waive its right to do so."); All. Gen. Ins. Co. v. Ins. Co. of State of Pa., 134 F.3d 362 (4th Cir. 1998) (holding that insurer is not estopped from seeking indemnification from another insurer because it undertook the defense of the litigation for the insured).

[18] *Chubb Custom Ins. Co.*, 2006 WL 1663820, at *5.

borrowed employees of JBS and therefore limited to the LHWCA as their exclusive remedy. Plaintiffs, however, made this argument to the district court on summary judgment and it was denied. Plaintiffs contend that following the denial of summary judgment, they faced trial in a forum that they perceived to be Plaintiff-friendly and therefore settled the case for an amount far less than their potential exposure and the initial demand. This Court can see no reason why such a measured decision would be considered unreasonable. To show a settlement is reasonable, "the insured need not show that he would have lost the case, but only that a reasonably prudent person would have settled the case."[19] Certainly Plaintiffs were reasonable in settling the claims for a fair amount in exchange for avoiding the cost and uncertainty of trial.

Finally, Defendants assertion that some other subcontractor agreement may exist between JBS and Wire based on statements made by a Wire representative at a deposition that took place years after the settlement does not render the settlement unreasonable.

## CONCLUSION

For the foregoing reasons, the Motions are DENIED.

New Orleans, Louisiana this 9th day of May, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**

---

[19] *Arceneaux*, 969 So. 2d at 771.