UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN BLUDWORTH
SHIPYARD, INC. ET AL.                          CIVIL ACTION

VERSUS                                          NO: 17-3459

CAPITAL CONSULTANTS, INC.
OF LOUISIANA ET AL.                             SECTION: "H"

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

In June of 2014, Defendant Capital Consultants, Inc. of Louisiana ("Capital") and Plaintiff Wire Industrial, Inc. ("Wire") entered into a teaming agreement in which Wire agreed to handle the hiring and leasing out of laborers to customers while Capital handled certain financial and administrative matters (the "Teaming Agreement"). Thereafter, two such laborers were injured while working for Wire's customer, Plaintiff John Bludworth Shipyard Inc. ("JBS"). Wire's insurer First Mercury provided JBS with defense, indemnity, and insurance coverage for the laborers' claims against JBS. In this matter, First Mercury, JBS, and Wire seek indemnity, defense, and insurance coverage from Capital and its insurer Liberty Mutual

1

Insurance Company ("Liberty Mutual") for the amount paid in settlement of the laborers' claims.

This case proceeded to a bench trial on June 4, 2018. On Defendant's Motion, the claims by JBS and Wire were dismissed during trial for failure to show damages. Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law as to First Mercury's claim against Capital and Liberty Mutual. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## **FINDINGS OF FACT**

1. In June of 2014, Capital and Wire entered into a teaming agreement in which Wire agreed to handle the hiring and leasing out of laborers to customers while Capital handled certain financial and administrative matters (the "Teaming Agreement").
2. The parties agreed to share profits on a 50/50 basis under the Teaming Agreement.
3. The Teaming Agreement stated that Capital "will supply all back office support including coverage of Workers Compensations, Liabilities, and taxes for payrolled employees." It later states that Capital "will provide Liability Insurance."
4. Wire sought out the Teaming Agreement with Capital because of its need to procure a lower rate for worker's compensation insurance.
5. The Teaming Agreement was intended as a short term solution to assist Wire in procuring worker's compensation insurance.

2

6. There was no testimony at trial that the parties contemplated insurance coverage for indemnity agreements previously entered into by Wire when negotiating the Teaming Agreement.
7. Capital had a company policy in which it refused to sign any agreement that required it to indemnify a third party for its own negligence.
8. Capital would not have signed an agreement with Wire that required it to indemnify a third party for its own negligence.
9. Wire leased two workers, Gilberto Flores and Santos Beltran Silva, to Plaintiff John Bludworth Shipyard Inc. ("JBS") pursuant to a subcontractor agreement between Wire and JBS that predated the Teaming Agreement (the "Subcontractor Agreement").
10. The Subcontractor Agreement provided that Wire shall defend, indemnify, and provide insurance coverage to JBS as an additional insured for claims involving bodily injury or death of Wire's employees that are asserted against JBS, regardless of JBS's negligence.
11. While working for JBS, Flores and Silva were injured and subsequently filed suit in the U.S. District Court for the Southern District of Texas against JBS for its negligence in causing their injuries.
12. The Subcontractor Agreement was in effect at the time of the accident.
13. The Teaming Agreement was in effect at the time of the accident.
14. Capital never saw the Subcontractor Agreement prior to the accident.
15. Flores and Silva were employees of Wire prior to the Teaming Agreement.

16. The worker's compensation policy provided by Capital pursuant to the Teaming Agreement provided coverage to Flores and Silva after the accident.
17. Pursuant to indemnity and insurance coverage clauses in the Subcontractor Agreement, Wire's insurer First Mercury provided JBS with defense, indemnity, and insurance coverage for Flores's and Silva's claims against JBS.
18. First Mercury settled the claims brought by Flores and Silva for $200,000 each.
19. Capital and Liberty Mutual had notice of the lawsuit by Flores and Silva and refused to participate or provide coverage.
20. First Mercury seeks contribution from Liberty Mutual and Capital for the amount it paid in settlement.

## **CONCLUSIONS OF LAW**

21. This matter is governed by Louisiana law.
22. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "The determination of whether a contract is clear or ambiguous is a question of law." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 579 (La. 2003).
23. This Court has already found the Teaming Agreement to be ambiguous.
24. "[W]hen the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions,

or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties." *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981).

25. The parol evidence shows that the parties did not contemplate that the Teaming Agreement would require Capital to provide insurance coverage to Wire for indemnification agreements it had entered into with third parties.

26. Under Louisiana law, the intent to indemnify must be expressed in unequivocal terms and cannot be implied. *Freeman v. Witco Corp.*, 108 F. Supp. 2d 643 (E.D. La. 2000).

27. Plaintiff has failed to carry its burden to prove a breach of contract claim for insurance coverage for contractual indemnification under the Teaming Agreement because it has failed to show that Capital owed Wire such an obligation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims are dismissed with prejudice, and judgment shall be entered in Defendants' favor.

IT IS FURTHER ORDERED that the conference set for June 8, 2018 is CANCELED.

New Orleans, Louisiana this 5th day of June, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**